Martin, J.
delivered the opinion of the court. We agree with the plaintiff, that the master of a ship is liable for levissima culpa. gQ qUestj0n before us is only one of fact: was the defendant guilty of any neglect or fault ?
The plaintiff urges that he was, 1. In sailing from the port at dusk, and proceeding down the bay, during a dark night, without a pilot.
2. In transporting the goods on shore, without the plaintiff’s consent, and placing them on the beach, at a short distance from the water.
3. In selecting the boxes, which contained the books, to be landed, and suffering them to remain long on the beach.
I. The evidence shews that the defendant •• attempted to go out of the bay, the evening of his departure from the town of Pensacola.” The inference is strong, that he sailed in the day time. Nothing on the record enables us to ascertain the distance between the anchorage before the town, and the entrance of the bay. We are unable to cross-examine the witness, in order to discover whether the *599 place was a proper one to cast anchor in; r r r whether the extreme darkness of the night, and freshness of the wind, which are presented as the cause of the vessel getting aground, did not come on suddenly.
The evidence before us shews, that although the entrance of the Barrancas be difficult, “ vessels that commonly ply between New-Orleans and Pensacola, are not in the habit of employing pilots, either in coming in, or going out of Pensacola bay — that after two or three trips, captains are as capable of safely conducting their vessels, as any pilot, provided they be of a small draft, say, five or six feet;” that the defendant’s vessel is a regular packet, plying between New-Orleans and Pensacola, and captain Munroe, in the deponent’s knowlege, has been several times the same voyage; and the regulations of the port of Pensacola, do not require a pilot to be taken by vessels drawing not more than five feet water.
Jacobson holds, that coasting vessels are not bound to take pilots. Sea Laws.
II. The landing of the cargo, appears to have been a measure of necessity; we do not *600 know that the defendant was bound to con-suit the plaintiff, who, however, does not shew that he made any objection.
The testimony does not warrant the conclusion, which is endeavoured to be pressed on us, that the goods were carelessly left at too short a distance from high water mark.— The evidence is, that “ it blew hard, and rained the whole time they were engaged in landing the cargo, and after.” The manner in which the security of the cargo was provided for, is minutely detailed, and shews considerable care. It is sworn that “captain Munroe worked constantly, and made use of every possible exertion to get the sloop off, and took as much care of the cargo, while on shore, and disposed of it as judiciously as any man could have done.” It is shewn that extreme difficulty was experienced, in landing and bringing back the cargo on board, owing to heavy-winds and a high sea.
From all this, we are bound to infer, that, the plaintiff’s boxes were put at such a distance from high watermark, as the hurry the crew were in, permitted. It appears the spot they were placed in, proved a safe one during the storm, which prevailed while they *601 were brought ashore, and they were engaged h J during a second, and more violent storm, which no evidence enables us to say, could have been foreseen.
III. We are unable to discover that the violence of the storm left the defendant at liberty to make any selection, as to the part of the cargo which was first to be carried on shore; and the testimony shews, that “the crew were kept constantly at work, in en-deavouring to get the vessel off”; which precludes the idea, that any part of the cargo was unnecessarily left ashore, while it could have been safely brought back on board.
When it is considered that the plaintiff was on board, with a very near relation, by affinity, who had had the care of the books in Pensacola, and had himself delivered them to the defendant — that this person has been examined as a witness, it may be concluded that no circumstance which may avail the plaintiff has been omitted to be proven. Yet the case enables the defendant to shew that he did what could be expected from him.
We believe the captain took a proper car©of the goods, after the vessel got aground.
*602 The only doubt with us has been, whether the coming out of the bay at night was justifiable. It is shewn that vessels, drawing not more than five feet, are not bound to take a pilot; and although it is said, that in extreme freshes, vessels drawing nine feet come into the canal Carondelet, the presumption is, that a packet plying between Pensacola and New-Orleans, is of such a draft as will enable her to come in the ordinary height of water, which does not exceed six feet; so the captain, not being bound to take a pilot, was only bound to use the same care as a pilot, and is only chargeable as a pilot would be, in the present case.
It is therefore ordered, adjudged and decreed, that the judgment of the district court be affirmed with costs.